**19MAG4557**                                               ORIGINAL

Approved: _Jeffrey Coffman/MSA_
JEFFREY C. COFFMAN
Assistant United States Attorney

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :    **SEALED COMPLAINT**

         - v. -                   :    Violations of
                                       18 U.S.C. §§ 1343,
TOMER OSOVITZKI,                  :    1028A(a)(1) and 2
     a/k/a "Tom Osovitzki,"
                                  :    COUNTY OF OFFENSE:
              Defendant.               NEW YORK
                                  :

- - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    CHRISTINA L. FOX, being duly sworn, deposes and says that she is a special agent with the Federal Bureau of Investigation, and charges as follows:

                    COUNT ONE
                   (Wire Fraud)

    1.   From at least in or about March 2017 through at least in or about March 2019, in the Southern District of New York and elsewhere, TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, OSOVITZKI induced aircraft charter companies and other merchants to provide goods and services, and induced a credit card company and credit card payment processors to make payments to aircraft charter companies and other merchants, by, among other things, inducing or causing aircraft charter companies, other merchants, a credit card company and credit card payment processors to process

credit card transactions under the false pretense that the transactions had been approved by the credit card company, and/or with credit card account numbers belonging to other account holders, without those account holders' authorization.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
(Aggravated Identity Theft)

2. On or about April 2, 2018, in the Southern District of New York and elsewhere, TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, OSOVITZKI used and caused to be used the name and credit card number of a particular credit card account holder ("Account Holder-3") during and relation to his commission of wire fraud, as charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been an FBI Special Agent for approximately seven years. As part of my work at the FBI, I have received training regarding fraud and white collar crimes. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my examination of reports and records, interviews I have conducted, and conversations with other law enforcement officers, victims, and witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

**THE DEFENDANT AND HIS COMPANY**

4. At all times relevant to this Complaint, TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, was the founder

and President of a company that was in the business of brokering airline and private charter flights ("Osovitzki's Company").

### OVERVIEW OF THE SCHEME TO DEFRAUD

5. As set forth below, TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, perpetrated a scheme to defraud aircraft charter companies and other merchants, a credit card company (the "Credit Card Company") and credit card payment processors by, among other things, inducing or causing aircraft charter companies, other merchants, the Credit Card Company and credit card payment processors to process credit card transactions under the false pretense that the transactions had been approved by the Credit Card Company (the "Force-Post Transactions") and/or with credit card account numbers belonging to other account holders, without those account holders' authorization (the "Unauthorized Card Transactions").

### THE FORCE-POST TRANSACTIONS

6. Based upon information provided to me by the Credit Card Company and publicly available information about credit card transactions, I am aware of the following:

    a. Typically, when a person attempts to use a credit card to make a purchase, the seller of goods or services (the "Seller") swipes the credit card or manually enters the credit card information at an electronic point of sale device ("POSD"). When this occurs, the financial institution that issued the credit card generates and transmits to the Seller an authorization code through the POSD. This code signals to the Seller that the credit card is active and that the account has sufficient credit available, and allows the Seller to accept payment using the credit card. Conversely, if the financial institution determines that the swiped or manually-entered credit card is associated with a closed or non-existent account, or is unable to confirm that there is sufficient available credit on the account to cover the purchase, no authorization code is generated and, instead, the Seller receives notification that the transaction has been declined by the financial institution.

    b. A "force-post" transaction allows a Seller to bypass the authorization process by manually entering an authorization code. Point of sale devices have supported this functionality for decades, but the need for it has diminished over time as processing systems have evolved. A Seller conducts a "force-post" transaction by contacting the financial institution that issued the credit card and requesting an authorization code,

3

typically by phone. If the financial institution provides the authorization code, the Seller is then authorized to use it to override the declination of the credit card and complete the sale.

c. Unfortunately, any combination of digits forming an "authorization code" can be used to override a declined transaction at a POSD, including for a transaction as to which the credit card account does not have sufficient available credit, for a credit card account that has been cancelled by the financial institution, or even for a credit card account number that has never been issued by the financial institution. Many Sellers are not aware of this, however, and assume that if an authorization code "works" (*i.e.*, the "force-post" transaction is completed), then the code was legitimate. However, only an authorization code provided by the financial institution is valid as confirmation that the transaction has been approved by the financial institution. If the authorization code used is not in fact provided by the financial institution, the Seller assumes the risk of the transaction.

7. Based on information and records provided by the Credit Card Company, I am aware of the following:

a. TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, previously held a personal credit card issued by the Credit Card Company with an account number ending in 52002 ("Osovitzki Card-1"). By in or about August 2017, the Credit Card Company had cancelled this card due to returned payments and credit concerns.

b. TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, also previously held a personal credit card issued by the Credit Card Company with an account number ending in 32002 ("Osovitzki Card-2"). By in or about August 2017, ~~the~~ [another] had cancelled the card, and the account had gone into collection with a balance due of approximately $786,323.  [company CUF]

c. The wife of TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, ("Osovitzki's Wife") held a personal credit card issued by the Credit Card Company with an account number ending in 31008 ("Osovitzki's Wife Card"). By on or about January 29, 2018, the Credit Card Company had cancelled this card due to returned payment checks and credit concerns. As of January 9, 2019, the account balance was approximately $497,221.

d. The mother of TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, ("Osovitzki's Mother"), held a personal

4

credit card issued by the Credit Card Company with an account number ending in 71009 ("Osovitzki's Mother Card-1"). The Credit Card Company cancelled this card in or about November 2017 after it was reported stolen.

e. Osovitzki's Mother also held a personal credit card issued by the Credit Card Company with an account number ending in 73005 ("Osovitzki's Mother Card-2"). The Credit Card Company cancelled this card in or about November 2018 due to multiple returned payments and credit concerns.

8. As set forth in further detail below, based on information provided by the Credit Card Company and merchant victims of the Force-Post Transactions, including victims' email correspondence with TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, and/or agents of Osovitzki's Company, I am aware that from in or about March 2017 through at least in or about March 2018, OSOVITZKI and agents of Osovitzki's Company repeatedly presented account numbers for credits issued by the Credit Card Company and referenced in paragraphs 6(a)- 6(d), above, to Sellers as payment for aircraft charter flights and other goods and services. These transactions were or would have been declined by the Credit Card Company had they been processed normally through a POSD, because the cards had been cancelled by the Credit Card Company, or because the accounts did not have sufficient available credit. OSOVITZKI and agents of Osovitzki's Company provided fraudulent authorization codes to the Sellers in order to dupe them into processing "force-post" transactions. OSOVITZKI told the Sellers, including through email correspondence, that he had obtained these authorization codes from the Credit Card Company. This was not true. However, based on these false representations, Sellers conducted "force-post" transactions that were later declined by the Credit Card Company.

**Osovitzki Card-1**

9. Based on information and records provided by the Credit Card Company, I am aware that, from in or about March 2017 through in or about March 2018, approximately 12 Sellers processed approximately 30 "force-post" transactions on Osovitzki Card-1 in a total amount of approximately $1,156,944. Because the authorization codes used in connection with these transactions were not provided by the Credit Card Company, and Osovitzki Card-1 did not have sufficient available credit or had been cancelled by the Credit Card Company, the Credit Card Company ultimately declined each transaction. These transactions, some of which are further detailed in the paragraphs below, are set forth below:

| Charge Date | Amount | Merchant Identifier[1] |
|---|---|---|
| 3/31/2017 | $25,000 | National Basketball Association Team |
| 3/31/2017 | $50,000 | National Basketball Association Team |
| 4/20/2017 | $50,000 | National Basketball Association Team |
| 5/30/2017 | $50,000 | National Basketball Association Team |
| 10/23/2017 | $35,000 | National Basketball Association Team |
| 11/20/2017 | $35,000 | National Basketball Association Team |
| 1/19/2018 | $26,475 | Aircraft Charter Company-1 |
| 1/19/2018 | $40,326 | Merchant-1 |
| 1/20/2018 | $13,874 | Fuel Supply Company-1 |
| 1/22/2018 | $20,000 | National Basketball Association Team |
| 1/22/2018 | $50,000 | National Basketball Association Team |
| 1/29/2018 | $40,036 | Aircraft Charter Company-2 |
| 2/2/2018 | $20,000 | National Basketball Association Team |
| 2/2/2018 | $50,000 | National Basketball Association Team |
| 2/2/2018 | $65,037 | Aircraft Charter Company-3 |
| 2/2/2018 | $9,313 | Fuel Supply Company |
| 2/5/2018 | $75,000 | Aircraft Charter Company-3 |
| 2/5/2018 | $31,123 | Aircraft Charter Company-3 |
| 2/5/2018 | $81,733 | Aircraft Charter Company-3 |
| 2/5/2018 | $728 | Aircraft Charter Company-4 |
| 2/7/2018 | $61,151 | Aircraft Charter Company-5 |
| 2/9/2018 | $32,118 | National Basketball Association Team |
| 2/10/2018 | $41,600 | Aircraft Charter Company-6 |
| 2/12/2018 | $27,795 | Aircraft Charter Company-7 |
| 2/15/2018 | $30,015 | Aircraft Charter Company-8 |
| 2/19/2018 | $18,113 | Aircraft Charter Company-2 |
| 2/20/2018 | $9,183 | Aircraft Charter Company-3 |
| 2/21/2018 | $49,163 | Aircraft Charter Company-8 |
| 2/21/2018 | $49,163 | Aircraft Charter Company-8 |
| 3/5/2018 | $70,000 | Private Day School |
| TOTAL | $1,156,944 | |

10. Based upon information and records obtained from the Credit Card Company, I am aware that on or about February 12, 2018, Osovitzki's Company brokered a charter flight with Aircraft Charter Company-7. Aircraft Charter Company-7 reported to the Credit Card Company that TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, provided Aircraft Charter Company-7 with the Osovitzki Card-1 account number for payment, along with an authorization code that OSOVITZKI told Aircraft Charter Company-7 he had obtained from the Credit Card Company. Aircraft Charter

---

[1] Except where indicated, merchant names have been anonymized with descriptive identifiers based upon my review of information obtained from internet websites associated with the merchants.

Company-7 "force-posted" a transaction in the amount of $27,795. This authorization code had not in fact been provided by the Credit Card Company, which later declined the transaction.

11. Based upon information and records obtained from the Credit Card Company, I am aware that in or about March 2018, in connection with payment for past due tuition, a private day school (the "Private Day School") attempted to charge $70,000 to Osovitzki Card-1, but the charge was declined by the Credit Card Company. The Private Day School informed the Credit Card Company that TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, told the Private Day School that it was authorized to charge $70,000 to Osovitzki Card-1. The Private Day School informed the Credit Company that OSOVITZKI'S children attended the school, and that it had contacted OSOVITZKI, who told the Private Day School that he would speak with the Credit Card Company. OSOVITZKI later provided the Private Day School an authorization code that he claimed to have received from the Credit Card Company. The Private Day School attempted to process the transaction with the authorization code (though not as a "force-post" transaction), and the charge was again declined. The Private Day School contacted the Credit Card Company and provided the authorization code given to it by OSOVITZKI, and was informed by the Credit Card Company that the charge would remain declined. Private Day School-1 then contacted OSOVITZKI, who told the Private Day School to "force-post" the transaction. The Private Day School did so. This authorization code had not in fact been provided by the Credit Card Company, which later declined the transaction.

### Osovitzki's Wife Card

12. Based on information and records provided by the Credit Card Company, I am aware that from in or about September 2017 through February 2018, approximately eight Sellers processed approximately 21 "force-post" transactions on Osovitzki's Wife Card in a total amount of approximately $973,561. Because the authorization codes used in connection with these transactions were not provided by the Credit Card Company, and Osovitzki's Wife Card did not have sufficient available credit or had been cancelled by the Credit Card Company, the Credit Card Company ultimately declined each transaction. These transactions associated with Osovitzki's Wife Card are set forth below:

| Charge Date | Amount | Merchant Identifier |
|---|---|---|
| 9/26/2017 | $7,464 | Hotel |
| 10/6/2017 | $73,500 | Aircraft Charter Company-9 |

7

| 10/17/2017 | $29,983 | Aircraft Charter Company-10 |
|---|---|---|
| 10/19/2017 | $15,225 | Aircraft Charter Company-9 |
| 10/22/2017 | $63,105 | Aircraft Charter Company-10 |
| 10/31/2017 | $64,375 | Aircraft Charter Company-11 |
| 11/3/2017 | $67,200 | Aircraft Charter Company-9 |
| 11/4/2017 | $64,375 | Aircraft Charter Company-11 |
| 11/4/2017 | $28,080 | Aircraft Charter Company-12 |
| 11/6/2017 | $69,300 | Aircraft Charter Company-9 |
| 11/8/2017 | $33,600 | Aircraft Charter Company-9 |
| 11/11/2017 | $30,000 | Aircraft Charter Company-9 |
| 11/13/2017 | $42,000 | Aircraft Charter Company-9 |
| 11/14/2017 | $56,800 | Aircraft Charter Company-9 |
| 11/14/2017 | $67,200 | Aircraft Charter Company-9 |
| 11/27/2017 | $91,914 | Aircraft Charter Company-13 |
| 12/5/2017 | $66,150 | Aircraft Charter Company-14 |
| 12/6/2017 | $4,334 | Aircraft Charter Company-13 |
| 12/12/2017 | $24,297 | Aircraft Charter Company-15 |
| 12/16/2017 | $31,500 | Aircraft Charter Company-14 |
| 2/16/2018 | $43,160 | Aircraft Charter Company-12 |
| TOTAL | $973,561 | |

**Osovitzki's Mother Card-1**

13. Based upon information and records provided by Aircraft Charter Company-3 and the Credit Card Company, I am aware that:

a. On or about January 25, 2018, an [Osovitzki's Company].com email account was used to book a round trip charter flight with Aircraft Charter Company-3 at a cost of $156,732.92. The [Osovitzki's Company].com email account was used to send Aircraft Charter Company-3 a credit card guarantee form with the account number of Osovitzki Card-2. After Aircraft Charter Company-3 informed the user of the [Osovitzki's Company].com email account that the credit card transaction had been declined, the same [Osovitzki's Company].com email account forwarded the email to tom.osovitzki@[Osovitzki's Company].com, and asked him to call the Credit Card Company. TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, responded that he had called the Credit Card Company, and that the Credit Card Company had provided him with an authorization number, which he emailed to Aircraft Charter Company-3. This authorization number had not actually been provided by the Credit Card Company.

b. Aircraft Charter Company-3 attempted the transaction again (not as a "force-post" transaction), and informed Osovitzki's Company, including through the

tom.osovitzki@[Osovitzki's Company].com email address, that the card had again been declined. A user of another [Osovitzki's Company].com email address then emailed Aircraft Charter Company-3, with a copy to tom.osovitzki@[Osovitzki's Company].com: "The auth code is to post the transaction that has been approved by [the Credit Card Company]." An agent of Aircraft Charter Company-3 responded that she had called the Credit Card Company herself, and that the Credit Card Company had said that the card was no longer valid. TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, emailed in response: "Not valid? You mean the auth code? I'll call them now," and later emailed that he was on the line with the Credit Card Company, "and they are saying all cards on my account are ok; but such a large transaction requires manual authorization. [Osovitzki's Company employee] send [Osovitzki's Mother's First Name's] card perhpas [sic] Not sure why they said this."

c. A user of a [Osovitzki's Company].com email account then emailed Aircraft Charter Company-3 photocopies of Osovitzki's Mother Card-1 and Osovitzki's Mother's driver's license, and the attached message: "Please use AUTH Code 926387 to force transaction on the attached credit card. It has been handled by [the Credit Card Company]." Again, the authorization number had in fact not been provided by the Credit Card Company. However, as instructed, Aircraft Charter Company-3 "force-posted" the transaction (divided into two transactions, in approximate amounts of $75,000 and $81,733), which were later declined by the Credit Card Company.

d. On or about February 2, 2018, an [Osovitzki's Company].com email account was again used, on behalf of Osovitzki's Company, to book a three-city charter flight with Aircraft Charter Company-3, at a cost of $29,640.66. TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, was one of the listed passengers. A user of the [Osovitzki's Company].com email account advised Aircraft Charter Company-3 via email that the charge should again be put on Osovitzki's Mother Card-1, and that she would "have Tom right now to call [the Credit Card Company] to get the Auth." OSOVITZKI, through tom.osovitzki@[Osovitzki's Company].com, later emailed Aircraft Charter Company-3 a purported authorization code. That authorization code had not actually been provided by the Credit Card Company. However, as instructed, Aircraft Charter Company-3 "force-posted" the transaction, which was later declined by the Credit Card Company.

e. On or about February 5, 2018, Aircraft Charter Company-3 informed TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the

9

defendant, at tom.osovitzk@[Osovitzki's Company].com, that Aircraft Charter Company-3 had been informed that morning by its credit card vendor that the transactions it had processed to Osovitzki's Mother Card-1 were fraudulent or otherwise being disputed. OSOVITZKI, through tom.osovitzki@[Osovitzki's Company].com, responded: "I think [Osovitzki's Mother's first name] got confused here She saw 2 charges and got confused and scared," and instructed Aircraft Charter Company-3 to process the $156,723 in two transactions (again in the amounts of approximately $75,000 and $81,733) on Osovitzki Card-1. Later that day, OSOVITZKI emailed through tom.osovitzki@[Osovitzki's Company].com that he had "obtained the authorization" and provided Aircraft Charter Company-3 with two purported authorization codes. Again, neither of these authorization codes had actually been provided by the Credit Card Company. However, as instructed, Victim-3 "force-posted" the transactions, which were later declined by the Credit Card Company.

f. On or about February 24, 2018, after all of the charter flights referenced above had been provided by Aircraft Charter Company-3, the Credit Card Company informed Aircraft Charter Company-3 by mail that Osovitzki Card-1 had been cancelled in August 2017, and that the Credit Card Company was declining the approximately $262,075 of "force-posted" transactions that Aircraft Charter Company-3 had processed with Osovitzki Card-1. When Aircraft Charter Company-3 informed TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, of this, he provided several explanations for the problem, including that (i) he was unwilling to send payment until the Credit Card Company reversed the charges to his card, (ii) he would make payment by wire, (iii) he needed the Credit Card Company to "return the money," (iv) he would begin sending Aircraft Charter Company-3 small partial payments while he waited for his "overpayment check," and (v) Osovitzki's Company had experienced "internal theft and we have had to take a loan to pay this." Although OSOVITZKI and Aircraft Charter Company-3 agreed upon a payment plan in March 2018, Osovitzki's Company did not make the required payments. Aircraft Charter Company-3 filed a lawsuit against OSOVITZKI and Osovitzki's Company. As of August 2018, after neither OSOVITZKI nor Osovitzki's Company answered the complaint, Aircraft Charter Company-3 was in the process of obtaining a default judgment.

**Osovitzki's Mother Card-2**

14. Based on information and records provided by the Credit Card Company, I am aware that:

a. From on or about December 30, 2018, through on or about March 1, 2019, Osovitzki's Mother Card-2 was used in connection with approximately 24 credit card transactions that were processed through the POSD for a merchant account held by CTMS UK, Ltd ("CTMS"). The total amount of these transactions was approximately $369,640.[2]

b. All 24 of these transactions were declined by the Credit Card Company, because Osovitzki's Mother Card-2 had been cancelled by the Credit Card Company. However, because authorization codes were then entered into the POSD in connection with the transactions, they were processed by one of the Credit Card Company's payment processors (the "Payment Processor"), and some portion of the funds were paid into a CTMS UK merchant account linked to a Barclay's bank account held by CTMS UK. Because the authorization codes had not in fact been provided by the Credit Card Company, the Payment Processor may bear some of the loss.

15. Based upon my review of email communications, I am aware that TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, also uses the email address tom.osovitzki@ctmstravel.com.

### THE UNAUTHORIZED CARD TRANSACTIONS

16. Based on documents and information provided by the Credit Card Company, I am aware of the following:

a. A customer of the Credit Card Company ("Account Holder-1") held a corporate credit card with an account number ending in 61000 (the "Account Holder-1 Card").

b. A customer of the Credit Card Company ("Account Holder-2") held a corporate credit card with an account number ending in 67000 (the "Account Holder-2 Card").

c. A customer of the Credit Card Company ("Account Holder-3") held a corporate credit card with an account number ending in 31000 (the "Account Holder-3 Card").

### Unauthorized Use of Account Holder-1 Card

17. Based on information provided by Account Holder-1, I am aware that, among other things, Account Holder-1 arranges airline flights for a celebrity ("Client-1") and his/her associates. Account Holder-1 has used Osovitzki's Company as a broker to

---

[2] These transactions were initially denominated in pounds sterling.

11

purchase such flights, and provided Osovitzki's Company with the Account Holder-1 Card account number in connection with these business dealings.

18. Based on documents and information provided by the Credit Card Company, I am aware that:

a. From on or about April 6, 2017, through on or about October 26, 2017, the Account Holder-1 Card account number was provided by Osovitzki's Company to approximately 11 charter flight companies for charter flights that Account Holder-1 did not request, authorize, or utilize. A financial manager for Account Holder-1 informed the Credit Card Company that it did not authorize Osovitzki's Company to use the Account Holder-1 card account in connection with the approximately 24 separate credit card transactions associated with these flights, which were in a total amount of approximately $668,000.

b. Because these transactions were not authorized by Account Holder-1, the Credit Card Company bore this loss. Osovitzki's Company has promised to repay the Credit Card Company for the loss, but failed to do so. Osovitzki's Company has informed the Credit Card Company that it lacks the funds to make the Credit Card Company whole. As of March 2018, Osovitzki's Company had paid the Credit Card Company approximately $254,000 for these unauthorized transactions. Although the Credit Card Company bore the loss, beginning in February 2018 Osovitzki's Company began making payments to Account Holder-1 for these unauthorized charges. As of March 2018, Osovitzki's Company had paid Account Holder-1 only approximately $117,000 for these unauthorized transactions.

**Unauthorized Use of Account Holder-2 Card**

19. Based on information provided by a financial manager for Account Holder-2, I am aware that Account Holder-2 is an entertainment company in the business of, among other things, artist and athlete management, including arranging airline flights for its artists, including the celebrity authorized to use Account Holder-2 card ("Client-2"). Account Holder-2 has used Osovitzki's Company as a broker to purchase such flights, and provided Osovitzki's Company with the Account Holder-2 Card account number in connection with these business dealings.

20. Based on documents and information provided by the Credit Card Company, I am aware that, from on or about September 6, 2017, through on or about October 3, 2017, Osovitzki's Company

12

provided the Account Holder-2 Card account number to approximately 13 charter flight companies for charter flights that neither Account Holder-2 nor Client-2 requested, authorized, or utilized, including at least one flight for which TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, was listed as a passenger. Account Holder-2 informed the Credit Card Company that neither it nor Client-2 authorized Osovitzki's Company to use the Account Holder-2 Card account in connection with the approximately 18 separate credit card transactions associated with these flights, which were in a total amount of approximately $531,000.

**Unauthorized Use of Account Holder-3 Card**

21. Based on my review of records and information provided by an Austria-based aircraft charter flight company ("Aircraft Charter Company-15"), I am aware that in or about April 2018, Osovitzki's Company booked an April 2, 2018 charter flight from Shanghai to Paris, with Aircraft Charter Company-15, for a celebrity ("Client-3") and her associates, at a price of approximately $126,000. Osovitzki's Company failed to make payment for the flight by wire to Aircraft Charter Company-15 prior to the flight's departure. On the day of the flight, Aircraft Charter Company-15 demanded payment from Client-3 by wire or credit card before the flight would depart.

22. Based on my review of email communications, I am aware that, on or about April 2, 2018, a [Osovitzki's Company].com email account sent four credit card authorization forms authorizing Aircraft Charter Company-15 to charge Account Holder-3 Card in the amounts of $45,000, $40,000, $40,000, and $1,100. Each authorization form bore the purported signature of Client-3. Aircraft Charter Company-15 processed "block" or "authorization" transactions on Account Holder-3 Card corresponding to the amounts on the credit card authorization forms, with the expectation that Osovitzki's Company would soon make payment in full by wire, at which point Aircraft Charter Company-15 would release these "block" transactions.

23. Based on my review of records and information provided by Aircraft Charter Company-15, I am aware that, on or about April 5, 2018, TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, personally assured Aircraft Charter Company-15's CEO via WhatsApp text messages that OSOVITZKI had ordered that his bank send the wire payment, but that an error in the account number caused the bank to fail to process it. Over the next several days, OSOVITZKI repeatedly assured Aircraft Charter Company-15's CEO that the wire had been sent. Aircraft Charter Company-15's CEO requested that

OSOVITZKI provide confirmation of the wire transfer. OSOVITZKI stated that he would do so, but neither the confirmation nor the wire payment ever arrived.

24. Based on my review of records and information provided by the Credit Card Company, I am aware that, by on or about April 23, 2018, a representative of Client-3 informed the Credit Card Company that Client-3 had not authorized any charges by Aircraft Charter Company-15 to Account Holder-3 Card. As a result, by May 21, 2018, the Credit Card Company required Aircraft Charter Company-15 to refund the Credit Card Company for payments made by the Credit Card Company to Aircraft Charter Company-15 for the charges to Account Holder-3 Card.

25. Based on my review of records and information provided by Aircraft Charter Company-15, I am aware that TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, and Aircraft Charter Company-15's CEO continued to communicate by phone and WhatsApp chat messaging through on or about June 15, 2018, when OSOVITZKI ceased responding to Aircraft Charter Company-15's requests for payment.

26. Based on my review of records and information provided by the Credit Card Company, I am aware that, by letter dated September 25, 2018, Client-3 informed the Credit Card Company that she had not signed the Aircraft Charter Company-15 credit card authorization forms referenced in paragraph 22, above, and had paid Osovitzki's Company for the full cost of the April 2, 2018 charter flight prior to April 2, 2018. Ultimately, the Credit Card Company returned the approximately $126,000 to Aircraft Charter Company-15. However, because Client-3 had not authorized the charges to Account Holder-3 Card, and was deemed by the Credit Card Company to not be responsible for the charges, the Credit Card Company suffered a loss of approximately $126,000.

WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of TOMER OSOVITZKI, a/k/a "Tom Osovitzki," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

*Christina L. Fox*
Special Agent Christina L. Fox
Federal Bureau of Investigation

Sworn to before me this
10 day of May, 2019

THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK