

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

50 Main Street, Suite 1100
*White Plains, New York 10606*

March 22, 2023

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *United States* v. *Tomer Osovitzki*, S1 19 Cr. 794 (KPF)

Dear Judge Failla:

The Government respectfully submits this letter in reply to defendant Tomer Osovitzki's March 16, 2023 letter in opposition to the Government's restitution request ("Def.'s Ltr."). The parties have now reached agreement with respect to the restitution amounts for all victims other than American Express ("Amex"). In addition, the Government's requested restitution amount for Amex has been reduced based in part upon additional information and documentation provided by Osovitzki's counsel. The Government understands that the parties' positions are as set forth in the table below:

| **Victim** | **Government's Position** | **Osovitzki's Position** | **Difference** |
|---|---:|---:|---:|
| American Express | $772,478.92 | $359,244.11 | $413,234.81 |
| Victim-2 | $50,646.33 | $50,646.33 | $0 |
| Victim-3 | $262,075.28 | $262,075.28 | $0 |
| Victim-4 | $100,836.78 | $100,836.78[1] | $0 |
| Victim-5 | $63,180.00 | $63,180.00 | $0 |
| Victim-6 | $162,735.25 | $162,735.25 | $0 |
| **TOTAL** | **$1,411,952.56** | **$998,717.75** | **$413,234.81** |

The groups of transactions addressed in Exhibit A of Amex's affidavit are addressed below:

---

[1] Subsequent to Osovitzki's March 16, 2023 letter, the parties reached agreement on the $100,836.78 restitution amount for Victim-4.

Honorable Katherine Polk Failla
Page 2

**Tab A-1**

As opposed to disputing that he caused unauthorized charges to be made to this cardholder's Amex credit card in the amount of $413,234.81, or that Amex paid the merchants in those amounts, Osovitzki asserts that "[n]o misrepresentations are alleged to have been made to Amex and there is no evidence of any fraud against Amex regarding these transactions." This is not the case. Each charge was a fraudulent representation to Amex that the cardholder had authorized the charge. Amex paid the charges in the first instance based on this understanding and was "directly harmed by the defendant's criminal conduct during the course of the scheme, conspiracy, or pattern." 3663(a)(2).

The parties agree that "a defendant's restitution liability under the [Mandatory Victim Restitution Act ("MVRA")] is capped at the actual loss incurred by his victims." *United States v. Thompson*, 792 F.3d 273, 280 (2d Cir. 2015). Osovitzki argues that Amex does not qualify as a "victim" under the MVRA and is instead a third-party provider of compensation. He bases his argument upon an explicit assertion that 18 U.S.C. § 366A's requirement the Court order "that the defendant make restitution to *the victim* of the offense" means that only a single person may be the victim of a given transaction, (Def.'s Ltr. at 2 ("Congress's use of the singular, "the victim," is no accident; only one person (natural or otherwise) may be identified as the victim with regard to the loss caused by each criminal action or transaction"); Def.'s Ltr. at 4 ("The language of the MVRA, which repeatedly speaks about 'the victim' in the singular, is clear that there can only be one victim regarding each transaction or loss amount.").

The defendant provides no case authority for his interpretation of the MVRA, and his argument omits reference to a critical portion of the MVRA's broad definition of victim:

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered *including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern*.

18 U.S.C. § 3663(a)(2) (emphasis added). This is no small omission, because the MVRA's "definition of 'victim' governs the calculation of the reimbursable loss itself." *Thompson*, 792 F.3d at 277. Read together, § 3663(a)(2) and § 3663A provide that the Court must order that the defendant make restitution to any person directly harmed by his criminal conduct in the course of the scheme or conspiracy.

As set forth in the Indictment and PSR, Osovitzki engaged in scheme to defraud Amex and others, including by using Amex credit cards without the cardholders' authorization. Amex paid merchants for charges to the cards. Amex was not a third-party provider of compensation – it was the initial, direct, and primary victim of Osovitzki's scheme. When cardholders reported to Amex that they had not authorized the charges, Amex often reversed them and suffered the sole loss. In the case of the cardholder and transactions at issue in Tab A-1, although the charges were incurred between April and October 2017, (Amex Aff., Ex A, Tab A-1), it was not until the cardholder reported the fraud to Amex in February 2018, (Amex Aff. ¶ 7), that Osovitzki made payments to the cardholder, (Def.'s Ltr. at 6). The reason is plain: he waited until the cardholder became aware of the fraudulent

2

charges and reported them to Amex.  Because Amex credited the cardholder for the fraudulent charges, Osovitzki's payments to the cardholder resulted in, if not a windfall to the cardholder, at least an offset of other amounts Osovitzki owed the cardholder.   But it was Amex – not the cardholders – who paid the merchants on the basis of the fraudulent transactions.  And it was Amex who was left to bear the loss.

*Thompson* does not hold that credit card companies that pay merchants for unauthorized charges to their cardholders' credit cards are not victims owed restitution under the MVRA.   792 F.3d 273.   First, the portion of § 3663(a)(2)'s definition of "victim" for offenses involving as an element a scheme or conspiracy did not apply in *Thompson*, which involved a conviction for a single count of access device fraud, in violation of 18 U.S.C. § 1029(a)(2).[2]  *Thompson* had not been convicted of participating in a conspiracy or scheme to defraud the credit card company, so it was not deemed a victim under the MVRA, but rather a third-party provider of compensation.   This also made sense because "[a]s part of the plea agreement, [Thompson] agreed to pay restitution to the [victim cardholders] for all losses resulting from his crime," *Thompson*, 792 F.3d at 275, as opposed to the credit card company.   Osovitki, on the other hand, stands convicted of a conspiracy to engage in a scheme to defraud Amex and others, and has "agree[d] to make restitution in an amount ordered by the Court, in accordance with [the MVRA]," (Plea Agreement at 2), which must be assessed under § 3663(a)(2)'s expansive definition of "victim" for offenses involving, as an element a scheme, conspiracy, or pattern of criminal activity.

The question for the Court is whether Amex was "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."   18 U.S.C. § 3553(a)(2).   It was, including with respect to the specific transactions that remain in dispute in tab A-1.  *Thompson* involved the defendant's targeted theft from a single elderly couple and the stealing of their funds through multiple financial institutions.   Osovitzki's offense centered around his misuse of Amex credit cards for transactions at dozens of merchants over a more than 18-month period.  Amex was the *direct* victim of Osovitzki's conspiracy and wire fraud scheme.   It was, after all, Amex who paid the merchants for the unauthorized charges.   The credit cards holders whose Amex cards he used without authorization were his *indirect* victims, to the extent that Amex required them to pay for the unauthorized transactions.  *See United States v. Terry*, 142 F.3d 702, 712 (4th Cir. 1998) ([C]redit card holders are indirect victims in a scheme to defraud their credit card issuers) (citing *United States v. Blake*, 81 F.3d, 498, 503-04 (4th Cir. 1996) (holding, under the MVRA's predecessor, the Victim and Witness Protection Act, that the victims in a § 1029(a)(2) credit card fraud case were the credit card companies, and not the cardholders from whom the cards were taken during robberies, because the access device fraud offense off conviction did not include the theft of the cards, and does not include as an element a scheme, conspiracy, or pattern of criminal activity that encompasses such conduct).

---

[2] The elements of a violation of 18 U.S.C. § 1029(a)(2) are:   First, that the instrument at issue is an access device; second, that the defendant used an unauthorized access device during any one-year period, and in so doing obtained anything of value amounting to $1,000 or more; third, that the defendant acted knowingly, willfully and with intent to defraud; and Fourth, that interstate or foreign commerce was affected.   Sand et al., Modern Federal Jury Instr. 40-3.

Honorable Katherine Polk Failla
Page 4

    Amex was directly harmed by Osovitzki's criminal conduct with respect to the transactions set forth in Tab A-1, and is therefore a "victim" to whom restitution must be ordered pursuant to the MVRA. Osovitzki's ultimate decision to send payments to the cardholder did not make Amex whole and does not offset the restitution due. Accordingly, the Court's restitution order should include this $413,234.81.

### Tab A-2

The Government's restitution request no longer includes these transactions totaling $52,000.

### Tab A-3

The Government's restitution request no longer includes these transactions totaling $126,100.

### Tab A-4

The Government's restitution request no longer includes this transaction totaling $16,456.

### Tab A-5

The Government's restitution request no longer includes these transactions totaling $454,825.

### Tab A-6

Osovitzki does not object to the restitution amount of $283,206.60 set forth in Tab A-6. In addition, based upon discussions with Osovitzki's counsel subsequent to the filing of his opposition letter, the Government understands that Osovitzki no longer contends that $20,000 of these charges should be credited against the restitution owed to Victim-4.

### Tab A-7

The Government's restitution request no longer includes these transactions totaling $110,308.

### Tab A-8

The parties agree that restitution of $10,186.60 is proper for this transaction.

### Tab A-9

The parties agree that restitution of $65,850.91 is proper for this transaction.

Honorable Katherine Polk Failla
Page 5

**Conclusion**

      For the foregoing reasons, the Court should order restitution in the total amount of $1,411,952.56.

                                                Respectfully submitted,

                                                DAMIAN WILLIAMS
                                                United States Attorney
                                                Southern District of New York

                          By:     _/s/ Jeffrey C. Coffman_
                                                Jeffrey C. Coffman
                                                Assistant United States Attorney
                                                Tel: (914) 993-1940

Cc:    Sanford Talkin, Esq.
          Noam Greenspan, Esq.
          By ECF